The next case this morning, International v. DHS, 2012-11-23. Mr. Eisenberg, whenever you're ready, please. May it please the Court, my name is David Eisenberg and I represent the appellant, Merlin International, Inc. The issue on this appeal is one of law, whether the court below properly applied the findings that it made to the law. Merlin asserts that based on the findings below, the only conclusion is that the government breached this contract and that Merlin is entitled to damages in excess of $14 million plus interest is set forth in its claim letter. The contract language is set forth in the blanket purchase agreement which was incorporated by reference into the contract. Does your argument boil down to the government can't reconsider whether it had a bona fide need? One government administrator made the decision that it did, next one can't come along and supplant that decision. It cannot reconsider it if the facts to support the original bona fide need have not changed. What if it was discovered though that the first administrator was unaware of the facts? The facts had not changed, but when he made the decision he was unaware of them. Then would it be okay? In this particular case, it doesn't seem that when the CIO made the second determination, he does not say that there was a change in fact. What he said is that some assumptions were invalid. Wasn't there $40 million licenses and none of that software was used? Well, that's not exactly the finding of the board below. The board below actually finds that they were used and the board states that I believe on page 4 of the opinion. Could you tell us, because I thought that the board had concluded that none of the $40 million UCM licenses. On page 4 of the opinion, it says these licenses were being used to support two USCIS initiatives, one a fraud tracking system and the other... I'm sorry, can you just point us to the paragraph? One, two, three, the fourth paragraph down. In November 2005, it's about halfway down on the right-hand side. It says these licenses were being used to support two USCIS initiatives, one a fraud tracking system and the other a project to achieve records digitization. And that's based on information which is contained both in the blanket purchase agreement. In the blanket purchase agreement in section C1.1, this is at page A70 of the appendix, it says under C1.1 at the bottom of that paragraph, contractor technology was recently employed in phase one of the fraud tracking system. And for an explanation as to what that means, we only need to look at the acquisition plan. And the acquisition plan, which is at page A1218 of the appendix, right above A1B, there's a paragraph, and it says two USCIS initiatives are currently using Siebel UCM software. The first is the fraud tracking system. The second is the USCIS Office of Records. So the evidence is that these licenses were being used. These are the representations that the government made. The government made them in the blanket purchase agreement tomorrow. Okay, but then the board's finding on page 31 is the CIO confirmed in his testimony that even if some limited use may have been made of some of the 40 million licenses to digitize records, most licenses, in fact, were not used. So there's a finding that most licenses weren't used, right? There's a finding that most licenses were not used, but that's contrary to the representation that the government made in the blanket purchase agreement. And as the board below... So the new officer comes in, looks at it, and can't say, hey, these are new facts? Well, except for the fact, Merlin entered into this contract based on certain expectations, understanding, and contractual language. And now the government is saying that Merlin couldn't rely on that contractual language and that the expectations and understanding upon which Merlin entered into this contract had also had no right to enter into the contract. But that's contrary to Section H10.8. And I'll go back to that. And it says, the key line is that after it says that the government agrees to use its best efforts, so long as the bona fide needs of the government continues to exist. The next sentence is, because of this commitment, the government is receiving favorable pricing which is not normally available. So long as the bona fide needs of the government continue to exist. Right, but that is meaningless unless the government can demonstrate that the facts have changed. And the government can't demonstrate that the facts have changed by saying that a representation we made in the blanket purchase agreement, upon which you relied, is wrong. We're getting no use out of this stuff. But that's where the breach of warranty claim comes in. Because the government did make representations as to the use that's contained in the blanket purchase agreement. And it also made representations as to the validated need that they needed in excess of 500 million records. And the warranty law is quite clear. What they didn't know was that their systems were so bad that they wouldn't all tie into it. Well, again, I would disagree with that. That is what one of the things that Mr. Conklin said. He said that it was a change in strategy from refurbishing to replacing. But that, too, is directly contrary to the acquisition agreement. And that would be on page A1222 of the appendix. And on that page, at the top of the page, this is the acquisition plan that the government created prior to entering into this order. It says, U.S. CIS has a tentative decommissioning schedule for the CIS and major systems that feed into the CIS. And it lists them. Claims 3 mainframe, land, claims 4, CIS. The next two lines say there is considerable business risk to U.S. CIS if these systems are not replaced in a timely fashion. A critical element in any replacement system is the case management system, such as the Siebel solution, which will depend on software licenses. If Siebel UCM licenses are not acquired swiftly, it will impede the full progress. So the intent all along was to replace these systems. So when it says in the agreement that it is unlikely that leases entered into will terminate before the full lease term, you're saying that what it really means is it is impossible. No, what I'm saying is that it's not impossible if the government can demonstrate, change facts, but not only change facts. They can't go counter to the representations that they made. If there's a fact that was not represented, then that would be different. But they've represented this use, and they've represented the validated need based on the in excess of 500 million records. And as the board below cites the appropriate language for how to interpret a contract, the board says three things. You have to look at the plain meaning and consideration of the contemporary circumstances under which this contract was entered into. Meaning must be given to all parts, and you have to consider the contracting parties' intent. But this wasn't a case where there was a lack of due diligence on behalf of the government when it entered into this contract. There was a prior order for the 40 million licenses, and the government issued a stop work order for that order, in part because they weren't sure they needed the 40 million licenses. Then this issue arose whether they could partially terminate, and the government determined they couldn't partially terminate. They'd still have to acquire these licenses. So they revoked the stop work order. But when they revoked the stop work order, they said we need to do two things. We need to do a further study, and we need to do testing to see whether we actually need these licenses. And so that's what they embarked on doing after February. They did the market study. Then they negotiated the BPA, and they included these specific representations in the BPA. Then they started the testing, and they started the testing. They immediately removed these claims-free land systems, and I would suggest that the reason they removed it is because they planned to replace them anyhow, that they were subject to this decommissioning and set forth in the acquisition plan. But then with all that, they still entered into the contract. The contracting officer at that time said there was a bona fide need based on those facts, the contemporaneous circumstances at that time, to enter into this contract. And the CIO the next year can't say based on those same facts, we don't have a bona fide need. That goes right back to the very first question I asked you, which is what really is the heart of the issue for me, which is what if the first CIO didn't know all the facts even though they existed or didn't understand them or misunderstood them? Because what the government alleges, as I understand it, is that the previous CIO who said there was a bona fide need, the government says didn't know what it had in place when it came to fully describing and detailing the existing software for us and how it functioned. The bottom line is they ultimately determined that the UCM system would not work with the Claims III land, and it would require so much additional work to make those two things compatible that they just couldn't go forward. And that that wasn't appreciated. Was it capable of being known by the first CIO when he made his decision? Absolutely. But for whatever reason, he didn't know it, he didn't appreciate it, he didn't understand it. The next guy comes along, smarter, more information, whatever, but he figures that out. My problem is should the government be allowed in those kinds of situations to say, wait, we really don't have a bona fide need, or should they be held to it even though they really don't actually have a bona fide need? But because the first guy made a mistake thinking they did, that's it, you've got to stick with it. Well, except for the fact, I guess there's two things. One is the government can't enter into a contract unless it has a bona fide need. And the board below defined bona fide need as an immediate need, a solid requirement, and then the government says that when they make the decision in 2006, they say on pages 28 and 29 of the brief that bona fide need is tied to the ability to implement the product. You can't effectively have a bona fide need for something that can't be used. The whole point here is that my problem is can the government change its mind on whether it's a bona fide need based upon gathering more information, even if that information was previously available and they should have been able to figure this out? They can't change their mind when the contractor has relied on that and the contractor entered into the contract because the government represented that they had a bona fide need for the product. The contractor at that point has committed resources to acquire this product. The option, this isn't part of the original contract. This is on whether or not you exercise an option. So the contractor must be aware that there can always be a change. I mean you would concede here if there were changed circumstances, there would no longer be, there could be numerous situations in which there's no longer a bona fide need. You argue that in this case it just doesn't fall within that, right? Except this particular contract, as the board below points out, you can put restrictions on the government's ability when it exercises that option as to whether it has unfettered discretion and this particular contract does limit the second CIO's ability to make a decision in isolation. He can't make his decision in isolation. He has to consider the totality of the circumstances under which this contract was entered into and that's the commitment of the government. The consideration for the commitment of the government in section H10.8 has to be that the government has to demonstrate, change facts, otherwise it's meaningless that the bona fide need continues to exist. Because of this commitment, the government is receiving favorable pricing. What's the consideration to the contractor unless the government has to demonstrate, change facts? And further, in this particular case, both CIOs, they both said the claims-free land systems were brittle, the legacy systems were obsolete, and the other language that the board uses, we knew that it would be expensive to implement this product. The first CIO says, I'm willing to spend the money. The second CIO says, I'm not willing to spend the money. And that's the issue. The second CIO never says these products couldn't be used. He avoids saying that. Instead, he says these things like the assumptions were invalid, the change in strategy, the better understanding of the need, and even the board below says it's an evolving understanding. Neither the board nor the government points to any change facts that would allow the government to switch its bona fide need determination. And this contract, I would suggest, requires that the government demonstrate that in order to make a contrary determination in year two. Otherwise, it makes no sense to enter into this contract and have two different people look at the same set of facts and make contrary determinations. To me, that would be the quintessence of arbitrary and capricious based on the language of this particular contract, that there were restrictions contained in this contract and the government is bound by those restrictions. You're into your rebuttal, so why don't we hear from the government and then we'll get back to you. May it please the court. Maryland has raised three primary issues, the first being whether the board properly determined that the government's determination that it had no bona fide need for the unlimited licenses in 2007 and subsequent years was not an arbitrary and capricious determination. The board properly reached that conclusion. There were changed facts in the sense that there was additional information that was acquired by the chief information officer. The new information that was acquired was the result of this investigation and audit of the legacy systems themselves. It was determined that the legacy systems could not be adequately used with the unlimited licenses and achieve the government's security needs. So you're just saying the other side is wrong in construing the circumstances. There were indeed changes that justified bona fide need. Yes. There was new information as the court alluded to in the questioning. New information was developed showing that the legacy systems never could meet the government's security needs. What the government was trying to do back in 2005 is use those legacy systems with a data management tool, the data management tool being these unlimited licenses. The unlimited licenses were going to integrate all of the information in the legacy systems, produce a record that was true and accurate for every single person and an integrated record for each person. What was determined was that the legacy systems themselves couldn't meet the government's security needs because they couldn't give you what's called user-based security. There is no way to limit the user's access to the information out there in the system. Any user going onto the system has access to all of the information. You can't restrict his access based on his role as a user. And when it was determined that you couldn't meet your security needs, it was determined that we're not going to go down this path any longer. So what was different? Was it a fact of just experience or what had gone on before that informed the decision? Or was it that somebody had erred in reaching that conclusion years ago and somebody looked at it a different way? What was really the change? The change is the knowledge about the legacy systems themselves. And was that based on the experience in the interim? Or how did they obtain this knowledge about the legacy systems in 2000-whatever that they didn't have earlier? They did an outside audit and an investigation of the legacy systems themselves. These legacy systems were first brought on, I think it was in the 1980s. Is this information that was discoverable in the first instance but just was not discovered because there wasn't an adequate investigation or thought process? I think the record really does not address that question. The testimony was that when the CO came on, he directed that an investigation be done and that there was an outside audit of the legacy systems that revealed how they had been structured and changed over time and so now you understood what you really had. And the government really had no comprehensive record of what it had because these systems were brought on in the 1980s and then modified time and time and time again and so we really didn't have a record of what the system was. So it was determined that these systems themselves could not meet the government's need for user-based security and therefore it didn't make sense to try to have a data management tool work together with these legacy systems and then produce a record, a true and accurate record based on all these systems. As I understand at least a portion of Mr. Eisenberg's argument, which is that assuming we're dealing with a situation where the information and the conclusions were discoverable at an earlier date, it's just that somebody wasn't asking the right questions or wasn't asking for an appropriate evaluation. Is that really sufficiently arbitrary for purposes of a contractor who has the right to kind of rely on the fact that this was in existence at a certain point and nothing has changed and therefore I ought to be able to count on the fact that I'm going to be able to exercise my option? In this case, the case was basically litigated based on the government having determined that it had a bona fide need for the unlimited licenses and that there was a basis for that and that then the government reached a new decision. So there was no challenge to the initial decision to go forward with the contract. Going back to Judge Moore's question initially, which is if somebody is looking at the exact same facts and just has a different perspective and a different point of view and so changes his mind, is that enough to change whether or not there's a bona fide need or do you really need some change in the underlying facts or the situation? Based on the authorities under the Administrative Procedure Act, you don't really have to show a change in the facts themselves. If there is good reasons for making a change and the agency makes a change,  but here in this case, the agency did develop new information about the legacy systems and its security needs and the implications of the legacy systems themselves, that you didn't have user-based security and you wouldn't have user-based security even if you got this data management tool to work. You still wouldn't have user-based security. I think the short answer to your question is yes, you could have a reasonable decision that you don't have a bona fide need for a product based on the same set of facts, but here we have a case where the agency did develop new information through an outside audit and a comprehensive investigation and based on that new information, it decided it did not have a bona fide need. To me it sounds like there's an analogy to we're buying a new suite of avionics for aircraft that seem to be crashing over the last year and that's the new fact. They were always terrible aircraft, but we've learned that they don't work. New information did become available to the agency in 2000 through the outside audit that was done and based on that, they concluded that it didn't make any sense to try to integrate these legacy systems with the data management tool because of the security problem. Could they have done that without having these Siebel systems sitting there? Would they have been able to make that broad determination that it just couldn't be fixed? Well, the record does not address that. As I said, that's not the focus of the litigation. The focus of the litigation was on the new decision, not on the old decision. I wanted to address the other issues that have been raised. The other issue raised is whether the board properly determined that there was no breach of any warranty. Two things have been mentioned in the argument. One is the acquisition plan and the other is the representation as to the 500 million records. As we pointed out in our brief, the assertion that there were 500 million records was correct and that is supported in the record. The acquisition plan that council has relied upon, especially today at the argument, that is not part of the contract. It is not something that Merlin had. They didn't rely upon it because they didn't have it. So any statement that is made in the acquisition plan cannot be the basis for any claim of breach of warranty. The board resolved the breach of warranty claim by looking at all of the language that's contained in Section H.10. In particular, it says that the language in H.10.3 regarding essential use had to be read together with the other paragraphs of Section H.10. Those paragraphs specifically state that the government will only exercise the option if it both has a bona fide need for the product in the optional period and it has the funds available. So because it did not have a bona fide need for the product, the option was not exercised in this case. And because the government had the right under the contract to not exercise the option when it didn't have a bona fide need, there can be no breach of any warranties or any guarantees in this case. And the language of the board's opinion that we are relying upon is on pages 34 to 35 of the opinion where it says specifically that the language regarding essential use of the system in Section H.10.3 cannot be read in isolation from the language of the modified BPA as a whole, referring to Section H.10. So essentially the board has interpreted this contract, including the language in Section H.10.3, stating that the government has a reasonable belief that it has a bona fide need for the system and that that need will continue to exist. And there was never any challenge to that assertion by Mine Berlin. There was testimony by the acting CIO, the acting Chief Information Officer, Ms. Martin, as to the basis for her decision in the record, that it was anticipated that the number of records would increase because of these legislative initiatives that were anticipated. The last primary issue raised by Merlin has to do with the non-substitution provision, which is in Section H.10.10, and there the board relied on the ordinary meaning of replace, which is the language in that provision. Because the government had not replaced the unlimited licenses with any other product, then it found that there was no violation of the non-substitution clause, which is in Section H.10.10. This is outside of the record and has nothing to do with our decision in this case. Do you know what's happened since then? This all went down years ago. Did they proceed in doing a new system, a different system? Are they up and running or are they still figuring out what's going on? I am informed that the agency is still trying to essentially take down these legacy systems. They're still using the legacy systems, but they are still trying to replace them. I think it's in the record at the time of the hearing, which was in 2010, that Congress had appropriated funds to try to replace the legacy systems, and that's what the agency still is continuing to do. It's using the legacy systems but still trying to replace them. The only other issue that's raised in the brief was the question of whether the agency had violated the duty of good faith and fair dealing. As we pointed out in our brief, that question was not raised before the Board and so it's not directly addressed in its decision. I would point out, though, that in footnote 20 of the Board's opinion, the Board stated that there's no evidence that this was a bait and switch, essentially. There's no evidence that the government was refusing to exercise this option because it was going to get a better deal or take some other different product. So we think based on that finding, there's no violation of the duty of good faith and fair dealing. I think we have your argument. Thank you. Your Honor, just briefly in rebuttal, based on this contract, the position of Merlin is that the government must show change in facts based on the commitment that they made with respect to they received favorable pricing and the consideration to the contractor is that there have to be a change in facts and that the government's bound by its initial bona fide need determination when it entered into this contract. Nobody forced it to enter into the contract at that time. It chose based on the contemporaneous circumstances to enter into it. It had removed Claims III land from the testing that it had started and it entered into this contract before the testing was complete. Those are the circumstances under which the government entered into this contract and interpreting a contract, considering the contemporaneous circumstances, the government's bound by that determination. They removed Claims III land just because they were so brittle and they couldn't be used and there's potentially these security issues. So for them to come back a year later and say the Claims III land systems that we removed have these security issues and are too brittle, that's what they knew at the time that they entered into this contract. In terms of the legislative drivers that were briefly mentioned, that's a condition pressed into the contract. It's not in the contract and therefore when they signed the contract it was waived. Even if they weren't enacted in December of 2005, it's the same fact in December of 2006. I just want to focus briefly on the Breach of Warranty Claim. The board below sets forth the standard for a Breach of Warranty Claim. The government assured the plaintiff of the existence of a fact. The government intended that the plaintiff be relieved of the duty to ascertain the existence and the government's assurance of that fact proved untrue. The acquisition plan, we're not relying on the acquisition plan for the use. As I stated, the use is contained in the BPA. So the BPA says that they were recently employed. The BPA talks about this in excess of 500 million records and the BPA talks about entering into a delivery order for the unlimited UCM licenses. Merlin relied on that information. To the extent the facts proved to be untrue, that's a Breach of Warranty. This warranty itself is a warranty that the use is essential. It's not a warranty, as the board below says, of an expectation. I'm not sure how you can have a warranty of an expectation, but it's a warranty that the use is essential. That's what the government said based on these facts. Merlin relied on those facts and therefore there's a Breach of Warranty and Merlin should be entitled to recover its damages. Just briefly with the non-substitution clause, they acquired the same product, the 40 million Siebel UCM licenses during the non-substitution year. They knew that they'd have to acquire those before they entered into the contract and they didn't make it an exception and therefore it's a violation of the non-substitution clause. Thank you.